[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter was commenced by the plaintiff's complaint dated April 14, 1994 with a return date of May 17, 1994. On June 6, 1994 the defendant filed its answer and a special defense to this action. On June 9, 1994 the plaintiff filed a reply to the defendant's special defense. The plaintiff is Geraldine Meade and the defendant is the Levitz Furniture Corporation.
The plaintiff alleges that she fell in the defendant's furniture store in Southington, Connecticut on November 30, 1993. She testified that on that date she went to the defendant's store with her brother, Henry Meade, so that her brother could purchase some furniture. Mr. Meade purchased the furniture but was told by the defendant's employees that they could not deliver it that day. The plaintiff and her brother left the defendant's store and came back later in the day with a truck and some friends to transport the said furniture to Mr. Meade's home. The plaintiff testified she was wearing dungarees and red and white flat sneakers upon her return to the defendant's store. She stated that she was walking through the warehouse area when she was caused to fall when she slipped on CT Page 1323 grease that was on the floor. She testified she felt herself sliding and as she fell she hit her head and left knee on an iron piece. She also injured her right shoulder in the fall. She stated grease was on her clothes and sneakers. She testified she washed her clothes and most of the grease came out and that while she still has the sneakers, she does not wear them any more and the grease is now off of them.
A defendant employee, Warren Crawford, came over to Miss Meade according to her and said to her, "Stay there, don't move and I'll lift you." Miss Meade stated he then gently lifted her up. Miss Meade stated that her brother took her to St. Mary's Hospital Emergency Room.
Henry Meade, the plaintiff's brother, testified that he was walking in front of the plaintiff in the defendant's store when he heard her yell. He then looked back and saw the plaintiff on the floor. He stated Mr. Crawford said, "don't pick her up," that he would. He stated the plaintiff was wearing sneakers and dungarees both times that day when she was at the defendant's store. Mr. Meade stated that he saw grease on the floor on the day of the plaintiff's fall. He also stated the area was greasy when he returned to the location of the fall two or three days later with the plaintiff's attorney.
Dino Cifelli, who is the defendant's operation manager, now, and on the date of this incident, stated that on November 30, 1993 there were no signs blocking off the subject area to members of the public. He stated there are signs that do so now. He stated that a firm from California named Jay's was responsible for ensuring that the defendant's premises were clean and free of debris. Mr. Cifelli could not state if the subject area was cleaned on November 30, 1993 by Jay's or when the last time it was cleaned prior to that date. He stated Mr. Crawford paged him and that he was at the fall location within ten seconds of said page. He stated that the plaintiff was wearing shoes with four to six inch high heels at the time of the fall. He stated he took photos (Exhibit A1 and A2) thirty to forty-five minutes after the plaintiff fell. In the time between the fall and when the photos taken, nothing was done to the area as far as Mr. Cifelli knew. Mr. Cifelli stated that he was told that the plaintiff fell because her high heeled shoe got caught in the crack in the floor and that he tried to get date of 5/14/93 states the plaintiff injured her knee two or three days before when she fell down the stairs at home and CT Page 1324 twisted her left knee. She first saw Doctor Matza after this accident on December 2, 1993. He stated to her that her left knee worsened because of the November 30, 1993 fall and he continued to recommend surgery. She testified that Doctor Matza operated on her left knee. According to Exhibit B, this operation to the plaintiff's left knee took place on April 19, 1994. Dr. Matza had recommended surgery to this knee prior to this incident but the plaintiff did not have it done. Miss Meade states that her left knee still gives her pain for which she takes Tylenol.
In addition, the plaintiff alleges she injured her right shoulder in this fall. As a result, she testified Doctor Matza operated on it for a tear in the rotator cuff. According to Exhibit A, this operation took place on January 27, 1994. She testified she still has pain in the shoulder and she takes medicine for the shoulder every day. She also said she could no longer lift any object that was heavy.
The plaintiff also alleges that she injured her low back in this fall. She treated with Doctor Steven C. Rosa, a Chiropractor for this injury. (See Exhibit B).
On cross examination, the plaintiff testified that she was receiving social security disability benefits for her left knee prior to this incident. There is no claim for lost wages because the plaintiff was not employed at the time of this incident. She testified that she has stayed home and cared for her mother for the last fifteen years. She also testified that before this fall occurred she use to exercise because she had high cholesterol readings and she use to dance, both of which activities she can no longer do as a result of her injures from this fall.
In Doctor Matza's report dated June 29, 1994 (Exhibit B), he gives the plaintiff a fifteen (15%) percent permanent partial disability of the right shoulder as a result of this fall. In that report he also gives the plaintiff a twenty (20%) percent permanent partial disability of the left knee which he breaks down in his report dated September 19, 1994 by stating that eight (8%) percent of the permanent partial disability of the left knee was incurred prior to the accident of November 30, 1993 and twelve (12%) percent of the permanent partial disability was due to the accident of November 30, 1993. In addition, Dr. Steven C. Rosa gives the plaintiff a five (5%) CT Page 1325 percent permanent impairment to the lumbar spine as a result of this fall.
After hearing the evidence, the court finds that the plaintiff did not sustain her burden of proof on the allegations in her complaint. Therefore judgment enters for the defendant on said complaint.
WILLIAM J. SULLIVAN, J.